**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 0:17-CV-60760**

JOAN RICHARDS, individually and on behalf of all others similarly situated,

*Plaintiff*,

v.

MDLIVE, INC., a Delaware Company,

*Defendant*.

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Joan Richards brings this Class Action Complaint and Demand for Jury Trial against Defendant MDLive, Inc. ("MDLive" or "Defendant") to put an end to its systematic practice of collecting and disclosing its consumers' confidential medical health information. Plaintiff alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

**NATURE OF THE ACTION**

1. MDLive is a "telehealth provider of online and on-demand healthcare delivery services and software."[1] MDLive created a mobile application (the "App") which promises consumers "Virtual Healthcare, Anywhere[,]" including "24/7/365 Access to Board Certified Doctors, Pediatricians and Therapists[.]"[2] Through its App, MDLive offers patients the

[1] *About MDLIVE - A Telehealth Company*, MDLive, https://welcome.mdlive.com/company/who-we-are/ (last visited April 18, 2017).
[2] *Home*, MDLive, https://welcome.mdlive.com/ (last visited April 18, 2017).

convenience of avoiding waiting in line or traveling to a doctor's office by connecting them to doctors via telephone or video chat.[3]

2. To use MDLive's services, patients download its App from either Apple's App Store or Google's Play Store and establish an account. MDLive asks patients to enter into the App their sensitive health information including, *inter alia*, health conditions, allergies, behavioral health history, recent medical procedures, and family medical history.

3. Unbeknownst to patients, MDLive designed the App to capture the contents of patients' screens by having the App continuously take screenshots for the first 15 minutes that patients use the App. Although these screenshots contain patients' sensitive and confidential health information, Defendant covertly transmits them to a third party without notifying patients and fails to restrict access to collected sensitive and confidential medical information to only those with a legitimate need to view that information (e.g., doctors and other medical providers).

## PARTIES

4. Plaintiff Joan Richards is a natural person and a citizen of the State of Utah.

5. Defendant MDLive, Inc., is a corporation organized under the laws of the State of Delaware with its principal place of business in 13630 NW 8th Street, Suite 205, Sunrise, Florida 33325.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because (i) at least one member of the putative Classes are citizens of a state different from the Defendant, (ii) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (iii) none of the exceptions under the subsection apply to this action.

---

[3] *Frequently Asked Questions*, MDLive, https://welcome.mdlive.com/patients/faqs/ (last visited April 18, 2017).

7. This Court has personal jurisdiction over Defendant because it transacts significant business in this District, and the unlawful conduct alleged in this Complaint occurred in and emanated from this District.

8. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant resides in this District.

## COMMON FACTUAL ALLEGATIONS

9. Defendant MDLive is a "telehealth" provider that offers patients who download its App the ability to remotely access healthcare services through virtual connection with physicians.[4] MDLive promises to connect patients with a "virtual consult[ant] to diagnose non-emergency medical issues over the phone or through secure video on your computer or smartphone" "within 15 minutes" of registering.[5]

10. Patients first download the MDLive App from Apple's App Store or Google's Play Store and register an account. Although the MDLive App is free to download, patients pay a $49 fee for a virtual doctor consultation (the "MDLive Virtual Visit"). *See* Figure 1.




(**Figure 1**, showing a fee comparison between a "MDLive Virtual Visit" and other traditional medical visits).

---

4 *Home*, MDLive, https://welcome.mdlive.com/ (last visited April 18, 2017).
5 *Id*.

11. Patients must then begin entering into the App their medical history including, *inter alia*, health conditions, medications, allergies, behavior health history, and family history. *See* Figure 2.




(**Figure 2**, showing the "Medical History" tab of the patient's profile).

12. MDLive programmed the App to inquire about patients' sensitive and personal information about their medical history under a variety of categories, including Allergies or Procedures. For example, under the "Behavioral Health History" category, patients are asked to specify what health conditions they suffer from such as Obsessive Compulsive Disorder (OCD), Bipolar Disorder, Schizophrenia, Depression, and Substance Abuse. Similarly, under Allergies, patients are asked to list all of their allergies. *See* Figure 3.







(**Figure 3**, showing examples of medical history requested by App).

13. In total, patients are told to provide highly sensitive and personal medical information as they enter their medical history.

14. MDLive knows that patients value the privacy of their sensitive medical information and so to entice patients to use MDLive over alternatives, MDLive affirmatively represents to patients that "[c]onfidentiality is a respected part of MDLIVE's Code of Ethics. We take your privacy very seriously."[6] Patients justifiably rely on MDLive's representations of privacy and confidentiality when they make a decision to enter their medical history and other health information into the App.

15. Unbeknownst to patients, however, MDLive continuously takes screenshots of patients' screens for the first 15 minutes after they open the App—exactly the amount of time MDLive purports it takes to set up an account and connect with a physician.[7] During those 15

---

6 *Frequently Asked Questions*, MDLive, https://welcome.mdlive.com/patients/faqs/ (last visited April 18, 2017).

7 *Home*, MDLive, https://welcome.mdlive.com/ (last visited April 18, 2017).

minutes, MDLive takes an average of *60 screenshots* of a patient's screen. By design, the screenshots capture all the sensitive medical history information entered by the patient.

16. Without notifying patients, MDLive programmed the App to transmit those screenshots to an overseas third party tech company called Test Fairy, based in Tel Aviv, Israel. Test Fairy works to "insert[] the necessary hooks to gather information" about an app's user experiences and to possibly identify bugs.[8] TestFairy claims that by directly tracking user interactions within an app, it can eliminate the need to obtain feedback from beta testers (e.g., users who test the functionality of an app before it's released) which tend to be a "mixed bag" in terms of quality.[9] TestFairy states that it provides "incredibly specific" feedback to app developers based on "live data" obtained from users during testing.[10]

17. TestFairy, however, is not a healthcare provider and MDLive patients are not made aware that MDLive will send their medical information to TestFairy in near real time. Nonetheless, MDLive designed the App to transmit collected screenshots (which contain patients' confidential medical information) to TestFairy's servers. MDLive does not disclose to patients that it captures screenshots of medical information or that it transmits screenshots to TestFairy. Nor does MDLive provide any justification for the wholesale disclosure of patients' medical information to TestFairy (likely because screenshots of patients entering medical information offers little to no value in ensuring proper app functionality or bug testing).

18. MDLive can ostensibly access the screenshots through an unrestricted database accessible to employees and/or others responsible for tracking and developing the App's user

---

[8] *TestFairy Opens Its Android App Testing Platform to All, Making Even Bad Beta Testers Useful*, TechCrunch, https://techcrunch.com/2013/05/28/testfairy-opens-its-android-app-testing-platform-to-all-making-even-bad-beta-testers-useful/ (last visited April 18, 2017).

[9] *Id.*

[10] *Id.*

interface and monitoring other user interactions. In short, the screenshots containing highly sensitive medical information are accessible to MDLive employees (and potentially unknown third parties) who have no reason or permission to see it.

19. Despite the sensitive nature of patients' medical history, MDLive fails to adequately secure or restrict access to the screenshots. Specifically, MDLive grants its own developers and/or designers (and possibly third parties like TestFairy) unfettered access to patients' medical history, without regard for whether those individuals require access in order to provide and/or improve the healthcare services provided by MDLive. Patients provide their medical information to MDLive in order to obtain healthcare services and reasonably expect that MDLive will use adequate security measures, including encryption and restricted permissions, to transmit patients' medical information to treating physicians. Contrary to those expectations, MDLive fails to adequately restrict access to patients' medical information and instead grants unnecessary and broad permissions to its employees, agents, and third parties.

## FACTS SPECIFIC TO PLAINTIFF RICHARDS

20. Plaintiff Joan Richards downloaded the MDLive App on to her smart phone and established an account with MDLive. Since downloading the App, she has used it on several occasions.

21. Upon opening the App on her smart phone, she completed her profile by providing her medical history, including highly sensitive and private personal information. Plaintiff provided the App with this information because she reasonably believed that her medical history would be kept private and shared only with individuals as necessary to provide her with healthcare services, such as a treating physician. Plaintiff relied upon MDLive's

representations that it would respect her confidentiality and take her privacy seriously by using, at minimum, industry standard security measures.

22. Unbeknownst to Plaintiff Richards, MDLive took screenshots of her activity—including her medical history—and delivered it to an overseas third party who continues to store the screenshots. Further, MDLive failed to implement adequate security measures by using an encrypted database with restricted permissions (granted by the patient) stating which individuals were entitled to access Plaintiff's medical information. Instead, MDLive permitted its employees, agents, and/or third parties to access Plaintiff's confidential medical information, even though such individuals did not provide any healthcare services. Therefore, MDLive's disclosures of Plaintiff's confidential information went beyond the scope of any agreement between Plaintiff and MDLive.

## CLASS ACTION ALLEGATIONS

23. **Class Definitions**: Plaintiff Joan Richards brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) individually and on behalf of classes and subclasses defined as follows:

> **User Class:** All individuals who (1) downloaded the MDLive App for Android devices and (2) provided their medical information to Defendant.
>
> **Purchaser Class:** All individuals who (1) downloaded the MDLive App for Android devices, (2) provided their medical information to Defendant, and (3) paid a fee through the App.
>
> **Utah User Subclass:** All members of the User Class who are domiciled in the State of Utah.
>
> **Utah Purchaser Subclass:** All members of the Purchaser Class who are domiciled in the State of Utah.

The following people are excluded from the User Class, the Purchaser class, the Utah User Subclass, and the Utah Purchaser Subclass (collectively the "Classes"): (1) any Judge or

Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Classes; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

24. **Numerosity**: The exact size of the Classes is unknown and unavailable to Plaintiff at this time, but it is clear that individual joinder is impracticable. The Classes likely consist of thousands of individuals. Membership in the Classes can be easily determined from Defendant's records.

25. **Typicality**: Plaintiff's claims are typical of the claims of the Classes' members, in that Plaintiff and the Classes' members sustained damages arising out of Defendant's uniform wrongful conduct.

26. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Classes' members, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

a. Whether Defendant's actions constitute a breach of contract;

b. Whether Defendant's App systematically collected patients' medical history information;

c. Whether Defendant's App systematically transmitted patients' medical history information to a third-party;

d. Whether Defendant's App obtained consent from patients to systematically collect and transmit their medical history information to a third-party;

e. Whether Defendant disclosed to patients that it would collect and transmit their medical history information to a third-party;

f. Whether Defendant represented to patients that it would maintain the privacy and confidentiality of their medical history information;

g. Whether Defendant intentionally invaded the private affairs of patients;

h. Whether Defendant's invasion was offensive to a reasonable person;

i. Whether Defendant's conduct constitutes fraud;

j. Whether Defendant's conduct constitutes unjust enrichment;

k. Whether Defendant's conduct violates the Utah Consumer Sales Practices Act, U.C.A. 1953 § 13-11-1 *et seq.*;

l. Whether Defendant's conduct violates the Utah Truth in Advertising Law, U.C.A. 1953 § 13-11a-1 *et seq.*;

m. Whether Plaintiff and the members of the Classes are entitled to restitution and/or damages, and if so, the proper measure of restitution and/or damages; and

n. whether Plaintiff and the members of the Classes are entitled to equitable and/or injunctive relief.

27. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes and have retained counsel competent and experienced in complex class actions. Plaintiff has no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff.

28. **Policies Generally Applicable to the Classes**: This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Classes as wholes, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward members of the Classes, and making final injunctive relief appropriate with respect to the Classes as wholes. Defendant's practices challenged herein apply to and affect the Classes' members uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff.

29. **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable. The damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendant's misconduct. Even if members of the Classes could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this case. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. As such, economies of time, effort, and expense will be fostered and uniformity of decisions ensured.

## COUNT I
**Breach of Contract**
**(On behalf of Plaintiff, the User Class, and the Purchaser Class)**

30. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

31. Plaintiff, the User Class, and the Purchaser Class members entered into a contract with Defendant to receive remote healthcare services through the MDLive App.

32. As a material part of that contract, Defendant was required to maintain the privacy and confidentiality of Plaintiff, the User Class, and the Purchaser Class members' medical information.

33. Defendant breached the contract with Plaintiff, the User Class, and the Purchaser members by, *inter alia*, (1) collecting and transmitting Plaintiff's, the User Class, and the Purchaser Class members' medical information to a third-party who continues to store and/or control that information, and (2) failing to implement adequate security measures to ensure that access to Plaintiff's, the User Class, and the Purchaser Class members' medical information was appropriately restricted, such as through the use of encrypted screenshots or images and/or patient-granted restrictions on the individuals permitted to access their medical information

34. As a result, Plaintiff's, the User Class, and the Purchaser Class members' privacy was violated, causing them to suffer embarrassment, anxiety, and concern regarding the safety and confidentiality of their medical information. Further, Plaintiff and the Purchaser Class members were harmed in the form of money paid to Defendant.

## COUNT II
**Intrusion Upon Seclusion**
**(On behalf of Plaintiff and the User Class and the Purchaser Class)**

35. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

36. As explained above, Defendant intruded upon the seclusion of Plaintiff, the User Class, and the Purchaser Class by secretly monitoring, collecting, and transmitting their usage of the MDLive App by taking consecutive screenshots of patients' screens, which revealed specific

details regarding their personal health and medical information. Further, Defendant permitted a third-party to store and/or control that information. Finally, Defendant failed to adequately restrict access to the medical information provided by Plaintiff, the User Class, and the Purchaser Class members, such as through the use of encrypted screenshots or images and/or patient-granted restrictions on the individuals permitted to access their medical information

37. By designing and programming the MDLive App to secretly capture and transmit patients' medical history, Defendant intentionally and knowingly intruded upon the seclusion of Plaintiff Richards', the User Class, and the Purchaser Class members' private affairs.

38. Further, Defendant's collection and transmission of the information featured in the screenshots—without the Plaintiff's, the User Class, and the Purchaser Class members' knowledge and consent—is highly offensive to a reasonable person as it reveals personal medical information that they believed to be confidential and private.

39. Defendant's intrusion upon the Classes' members' private medical information caused them mental anguish and suffering in the form of embarrassment, anxiety, and concern regarding the safety and confidentiality of their medical information.

40. Plaintiff, the User Class, and the Purchaser Class seek (1) an injunction that prohibits Defendant from collecting and transmitting patients' private medical information without informed consent and requires Defendant to implement adequate security measures to restrict access to such information so that its use will be limited to providing and/or improving the App's healthcare services, (2) actual damages, including the amount paid by any members of the Purchaser Class, and (3) punitive damages, as well as for costs and reasonable attorneys' fees incurred.

**COUNT III**
**Fraud**
**(On behalf of Plaintiff and the Purchaser Class)**

41. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

42. Defendant represented to the public—including Plaintiff and the Purchaser Class members—that its MDLive App kept patients' medical information private and confidential.

43. Contrary to those representations, Defendant knowingly collected and transmitted patients' medical information to a third-party without notifying the patients.

44. Indeed, Defendant's representation of "privacy" and "confidentiality" is material because consumers would not have downloaded the MDLive App had they known that Defendant would expose their medical information.

45. Defendant intentionally or recklessly made this representation to induce consumers into downloading the MDLive App.

46. Plaintiff and the Purchaser Class members relied on Defendant's representations when choosing to download the MDLive App.

47. As such, Plaintiff and the Purchaser Class members sustained damages in the form of money paid to Defendant.

**COUNT IV**
**Unjust Enrichment**
***In the Alternative to Count I, Breach of Contract***
**(On behalf of Plaintiff and the Purchaser Class)**

48. Plaintiff incorporates the foregoing allegations, excepting paragraphs 30–34, as if fully set forth herein.

49. Plaintiff and the Purchaser Class members conferred a substantial benefit on Defendant in the form of money paid for "virtual visits" within its MDLive App.

50. Defendant has knowledge of such benefit which it has accepted and/or retained.

51. Under principles of equity and good conscience, Defendant should not be permitted to retain the money belonging to Plaintiff and the Purchaser Class members. Despite its promise to do so, Defendant has failed to keep Plaintiff's and the Purchaser Class members' medical information private and confidential. Without notifying patients, Defendant intentionally disclosed Plaintiff's and the Purchaser Class members' medical information to a third party who continues to store that information. Further, Defendant has failed to adequately restrict access to patients' medical information, permitting its own employees, agents, and/or other third parties to access patients' medical information for purposes beyond the scope necessary to provide healthcare services through the App. Thus, Defendant's retention of this benefit without payment would be unjust.

**COUNT V**
**Violation of the Utah Truth in Advertising Law**
**U.C.A. 1953 § 13-11a-1 *et seq*.**
**(On behalf of Plaintiff, the Utah User Subclass, and the Utah Purchaser Subclass)**

52. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

53. Defendant is a corporation and therefore is a "person" as defined by U.C.A. 1953 § 13-11a-2.

54. Defendant's MDLive App is an "item which may be the subject of a sales transaction" and therefore is a "good" as defined by U.C.A. 1953 § 13-11a-2.

55. Defendant advertises its MDLive App and touts its App's "privacy" and "confidentiality" benefits. Despite the foregoing representations, Defendant transmitted Plaintiff's, the Utah User Subclass, and the Utah Purchaser Subclass members' private and confidential medical information to a third party who continues to store that information. Further, Defendant has failed to adequately restrict access to patients' medical information,

permitting its own employees, agents, and/or other third parties to access patients' medical information for purposes beyond the scope necessary to provide healthcare services through the App. As such, Defendant has engaged in a deceptive trade practice by, *inter alia*, misrepresenting the qualities and/or characteristics of its App.

56. Specifically, Defendant violated the U.C.A. 1953 § 13-11a-1 in the following manner:

a. In violation of U.C.A. 1953 § 13-11a-3(1)(e) by falsely representing that the MDLive App possesses a certain characteristic; and

b. In violation of U.C.A. 1953 § 13-11a-3(1)(g) by falsely representing that the MDLive App is of a "particular standard, quality, or grade."

57. Defendant did not disclose to Plaintiff, the Utah User Subclass, and the Utah Purchaser Subclass members that its MDLive App took screenshots of patients' activities and obtained information about their personal health information. Further, Defendant did not inform Plaintiff, the Utah User Subclass, and the Utah Purchaser Subclass that it sent the screenshots containing their personal health information to a third party who continues to store that information. Additionally, Defendant did not inform Plaintiff, the Utah User Subclass, and the Utah Purchaser Subclass that it granted its employees, agents, and/or other third parties access to patients' medical information beyond the scope necessary to provide healthcare services through the App.

58. Based upon Defendant's unlawful conduct, Plaintiff, the Utah User Subclass, and the Utah Purchaser Subclass seek: (1) an injunction that prohibits Defendant from collecting and transmitting patients' private medical information without informed consent and requires Defendant to implement adequate security measures to restrict access to such information so that

its use will be limited to providing and/or improving the App's healthcare services, (2) statutory damages of $2,000 per violation or actual damages (whichever is greater), and (3) an award of reasonable attorneys' fees under U.C.A. 1953 § 13-11a-4.

**COUNT VI**
**Violation of the Utah Consumer Sales Practices Act**
**U.C.A. 1953 § 13-11-1 *et seq.***
**(On behalf of Plaintiff and the Utah Purchaser Subclass)**

59. Defendant is a seller or other person who regularly solicits or engages in consumer transactions and therefore is a "supplier" as defined by U.C.A. 1953 § 13-11-3.

60. Defendant's offer and solicitation to download the MDLive App and the agreement between Plaintiff and Defendant to use the MDLive App constitutes a "consumer transaction" as contemplated by U.C.A. 1953 § 13-11-3.

61. Defendant represented to consumers that its MDLive App keeps patients' information private and confidential. Despite the foregoing, Defendant collected and transmitted patients' private health information without notifying patients. Further, Defendant has failed to adequately restrict access to patients' medical information, permitting its own employees, agents, and/or other third parties to access patients' medical information for purposes beyond the scope necessary to provide healthcare services through the App. As such, Defendant has engaged in a deceptive trade practice by, *inter alia*, misrepresenting the qualities and/or characteristics of its App.

62. Specifically, Defendant violated the U.C.A. 1953 § 13-11-4 in the following manner:

a. In violation of U.C.A. 1953 § 13-11-4(2)(a) by falsely indicating that the MDLive App possesses a certain characteristic; and

b. In violation of U.C.A. 1953 § 13-11-4(2)(b) by falsely indicating that the MDLive App is of a "particular standard, quality, [or] grade."

63. Defendant did not disclose to Plaintiff and the Utah Purchaser Subclass members that its MDLive App took screenshots of patients' activities and obtained information about their personal health information. Further, Defendant did not inform Plaintiff and the Utah Purchaser Subclass that it sent the screenshots containing their personal health information to a third party who continues to store that information. Additionally, Defendant did not inform Plaintiff and the Utah Purchaser Subclass that it granted its employees, agents, and/or other third parties access to patients' medical information beyond the scope necessary to provide healthcare services through the App.

64. Based upon Defendant's unlawful conduct, Plaintiff and the Utah Purchaser Subclass seek: (1) an injunction that prohibits Defendant from collecting and transmitting patients' private medical information without informed consent and requires Defendant to implement adequate security measures to restrict access to such information so that its use will be limited to providing and/or improving the App's healthcare services, (2) an award of actual damages under U.C.A. § 1953 13-11-19, and (3) an award of reasonable attorneys' fees under U.C.A. 1953 § 13-11-17.5.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Joan Richards individually and on behalf of similarly situated individuals respectfully requests the Court to enter an order providing for the following relief:

A. Certify this case as a class action on behalf of the Classes defined above, appoint Plaintiff Joan Richards as class representative, and appoint her counsel as Class Counsel;

B. Declare that Defendant's actions constitute fraud, intrusion upon seclusion, and unjust enrichment;

C. Declare that Defendant violated U.C.A. § 1953 § 13-11-1 *et seq*. and § 13-11a-1 *et seq*.

D. An award of injunctive and monetary relief as necessary to protect the interest of the Classes;

E. Award Plaintiff and the Classes their reasonable expenses and attorneys' fees; and

F. Award such other further relief as equity and justice may require.

**JURY DEMAND**

Plaintiff demands a trial by jury for all issues that can be so tried.

Respectfully submitted,

**JOAN RICHARDS**, individually and on behalf of all others similarly situated

By: /s/ Dillon Brozyna
One of Plaintiff's Attorneys

Dillon Brozyna (91339)
dbrozyna@edelson.com
Edelson PC
123 Townsend Street,
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.373.9435

*Counsel for Plaintiff and the Putative Classes*